We'll move on to the third case of the day, United States v. Bell, No. 17-3505. We'll hear first from Mr. Freilich. How do you pronounce it? Freilich or Freilich? Freilich. Thank you. May it please the Court, my name is Matthew Freilich, and I, along with my colleague Clayton Fates, represent the appellant Demontae Bell. We're both practicing in this court under 711 licenses issued by the Bloom Legal Clinic at the Northwestern Pritzker School of Law. There are two things that went wrong in this case. The first was the nearly two-year delay between Mr. Bell's indictment and eventual trial. The second was the use of illegally obtained evidence at that trial. And, Your Honor, I'd like to turn first to the speedy trial issues. The district court committed a plain error when it excluded time from the Speedy Trial Act clock at the January 2017 pretrial hearing on the grounds that Mark Turner was an unavailable witness. The statute specifies exactly when a witness is unavailable for the purposes of time calculation under the statute. And it says that when a witness's whereabouts are unknown, he can only be held unavailable when his presence for trial cannot be obtained by the government's due diligence. Mr. Freilich, you're arguing plain error review for that? Isn't that de novo for that particular calculation? It normally would be, Your Honor.  The government has argued that this claim is waived because although Mr. Bell did bring a motion to dismiss on Speedy Trial Act grounds, he didn't refer to that precise time period in the motion. So the typical consequence of failing to make the requisite argument in the district court is forfeiture, in which case the legal conclusion would be reviewed for plain error. And are you arguing that for your Sixth Amendment claim, your Speedy Trial Act claim, or both? We're arguing plain error, at least under the statutory claim. The government has also argued that the constitutional claim is waived. However, both the government in R-84 in its response to Mr. Bell's motion to dismiss, and then the district court in R-86 in its opinion denying Mr. Bell's motion to dismiss, both addressed the motion as if it were both a statutory and constitutional speedy trial motion. So we would argue that that constitutional claim should be reviewed under the normal purpose. What is the judge supposed to do when the defense lawyer says it will be a logistical nightmare and I cannot cross-examine the government's key witness effectively if we don't delay the trial so we can bring him here in person? What's he supposed to do? Those might be circumstances that would support an ends of justice finding, Your Honor, but that's not what the district court did. It relied on an automatic exclusion of time under the Speedy Trial Act, and that's 3161H3, the unavailable witness provision. That exclusion is automatic, but it also provides a very specific definition for when it's triggered, and that's that it's the government's burden to show that a witness, his presence for trial cannot be obtained by the government's due diligence. So what's missing from this showing? He's in prison under quarantine, right? He was under quarantine, Your Honor. However, the government told the court that it could obtain Mr. Turner. That's the witness in question. It could obtain Mr. Turner's presence for trial by the scheduled trial date by video teleconference, and it offered to do that. But wasn't there an issue as to whether or not he could be cross-examined with exhibits? Effectively. Right. So Hugh Toner, that was Mr. Bell's attorney at the time, did express a preference for cross-examining. Pretty strong preference, right? He did, Your Honor, but that's not relevant to the inquiry under 3161H3, and that's an automatic exclusion of time. Why wouldn't that be relevant to his presence, the presence for purposes of testifying, including being cross-examined? Because it's the government's burden to show that they cannot procure a witness's presence. Nobody said he could physically be there, correct? No, Your Honor. So since when is video presence sufficient for presence under the Speedy Trial Act? So there is no per se— Particularly over the objection of the defense counsel. It was over the objection of defense counsel, Your Honor. I will note that Mr. Bell orally protested throughout this hearing that he objected to any further continuances under the Speedy Trial Act. And there is no per se rule that says no witness can ever testify in court by video teleconference. And the government offered, given the situation that Mr. Turner was in quarantine, that they were willing to procure his presence for trial. In the sense of video presence? That's correct, Your Honor. And the statute itself at 3162A2 says it's the government's burden to show that they cannot obtain a witness's presence by their own due diligence. But again, it's the presence point. Is presence by videotape, where you may not be able to effectively cross-examine someone, sufficient? It is sufficient, Your Honor, particularly in the context of— Is that going to defeat a claim for ineffective assistance of counsel later on? No, Your Honor. Mr. Bell, if there was any Crawford claim or anything like that that would have been relevant to an ineffective assistance of counsel, Mr. Bell's oral protests would have constituted waiver of that right. So there was a plain error when the government didn't even attempt to meet its burden under 3162A2 to show that Mr. Turner was an unavailable witness. And for that reason, that exclusion of time was an error, and the indictment should be dismissed. And this is especially true in the context of the 922G conviction, because everybody agrees that at the very least, 57 days of unexcludable time had already elapsed as to that 922G conviction. So either of the two exclusions of time that were challenging were more than 13 days long. So if this court finds that either of those two exclusions were an error, at the very minimum, that requires that the 922G conviction be dismissed. You're not arguing that the initial time period of the 56 or 57 days would apply to the counts that were added in the superseding indictment after that initial time period, are you? The government more or less argued that there was a single speedy trial clock. But the court did not rely on that, and the government has since withdrawn that. My question to you is, are you relying on that argument? Are you saying that the counts that were added in the superseding indictment that were not pending during that initial 56 or 57 day period, depending on how you calculate it, that those counts, that 56 or 57 days, should still apply to the newly added accounts? It is our position that there is a single speedy trial clock running, because in the government's opposition to Mr. Bell's motion to dismiss, they treated it as if there were a single speedy trial clock. But even if the court doesn't agree with that interpretation, between both of these... There's no law that I have seen that would support that interpretation. Well, there is the doctrine of judicial estoppel, which was discussed in Sednor, Your Honor. So when the government prevails on a single position and then argues another one, subsequently, it basically can't have it both ways. But even if the court doesn't agree with that, there were two improper exclusions, and together, those exclusions themselves are well over 70 days. So the speedy trial clock would elapse on all those counts, but particularly this 922G count, which already accumulated at the very minimum 57 days. Your Honor, I see my time is running short. I'd like to turn briefly to the Fourth Amendment issues in this case. I think it's important to note first that the district court was correct in ruling that there was an initial illegal search that took place in this case. The problem was that it refused to apply the exclusionary rule to that evidence. That was the photograph of a firearm taken from Mr. Buzz's cell phone. It was on the home page, right? Or the home screen? It was, Your Honor. So if you just pick up the phone, what do you have to do to see it? You have to open the phone, Your Honor. This is a flip phone, right? It's a flip phone, Your Honor. And that is important, because Officer Sinks, that was the person who the district court ruled illegally searched this phone, he had to physically manipulate it in order to get to that photograph. Can you turn it over and look at a serial number? Sorry, Your Honor? Can a police officer turn it over to get the serial number to put in a warrant application? He may be able to do that, Your Honor, but that's not what Officer Sinks did. He opened the phone, physically manipulated it to get this photograph, and then showed it to Mr. Bell and elicited a statement from him that was later suppressed. But the photograph itself wasn't. And the government relies on two subsequent search warrants that were executed after warrants were issued by Judge McDade and then Judge Howley, respectively. But the important thing is that both of those warrant applications contain the results of this illegal search. Does it matter if they also establish probable cause without the results of that search? It does, Your Honor. But these two warrant applications, without this information from the illegal search, don't establish probable cause independent of that. They rely solely on information provided by a single confidential informant, Mark Turner. The law enforcement provided no information that would have indicated he was credible and didn't bring Mr. Turner in before the issuing judges so that the issuing judges could assess his credibility. And this court in United States v. Bell, United States v. Glover, and United States v. Musgraves, repeatedly notes the problem with these situations where law enforcement is relying on a single confidential informant to establish probable cause. There's no credibility information about that confidential informant. Well, it's pretty clear that he was motivated, right? That Turner was motivated to cooperate. The issuing judge knew that, right? He did know that, Your Honor. But there's also concerns that he might have been motivated to lie because he was cooperating with law enforcement. You're over your time. Is there anything else that you want to tell us that's not in the briefs? I will just say there is no independent, nothing that's not in the brief, Your Honor. I'll reserve the remainder of my time. Thank you. Thank you. For the government, Ms. Boyle. Good morning, Your Honors. May it please the Court, my name is Katherine Boyle on behalf of the United States. The defendant, Monta Bell's, multiple trial challenges, multiple speedy trial challenges, and challenges to the April and October 2015 search warrant affidavits are without merit. As a preliminary matter, Your Honors, I'd like to address the issue of waiver. Here, Mr. Bell has waived his right to challenge any time period as non-excludable under the Speedy Trial Act, except for that July 22nd to September 28th, 2015 time period. Under the Speedy Trial Act, Mr. Bell's failure to file a motion to dismiss the specific remaining time periods he challenges amounts to a waiver of those claims. But even if this Court were to consider each of the four time periods Mr. Bell raises on appeal on the merits, fewer than 70 days pass with regard to each of the charged counts. Did you ask the Court, or did the Assistant U.S. Attorney ask the Court to exclude time after the arraignment, up until the first status? Because there was a large chunk of time that went by. Yes, Your Honor. Was there ever a request to exclude that time? Not that I'm aware of, Your Honor. I believe that the government is competing with those 57 days between the April 21st arraignment and then, actually it's June 17th because there was a motion to continue on June 18th. And between that first pretrial conference, which ended up being a status conference really, was excluded under the Speedy Trial Act. To look at some of the alleged Speedy Trial Act violations more closely, and I'll go in chronological order, first looking at the July 22nd to September 28th, 2015 time period. Under Seventh Circuit precedent, any decision made regarding whether to grant a continuance or exclude time does not constitute reversible error without a show of abusive discretion by the district court judge and prejudice. So, Bell has shown neither in this case. Here, Judge Shadid acted within his broad discretion in granting the government's motion to continue and determining that it was within the interest of justice to do so. Under the Speedy Trial Act, a judge must weigh factors that include whether failure to grant a continuance would result in a miscarriage of justice and also whether failure to grant a continuance would deny counsel for the defendant or for the government reasonable time necessary for effective preparation, taking into account the exercise of due diligence. That is exactly what Judge Shadid has done here. Judge Shadid looked at numerous factors, including the fact that the United States had just that morning turned over 1,000 pages of discovery and eight hours of audio and video recording. It's true that the defense attorney that Bell had at that time said that her client wanted to go to trial, but she also said she might need to continue based on the discovery. She noted the difficulty in meeting with her client. And I also would note that this was a Wednesday before a Monday jury trial. The district court judge is about to call jurors in from all over the Central District of Illinois and has a defense attorney here who will not commit to whether she will definitely be ready for trial on Monday. And if anything, seems to, by my reading of the transcript, be sort of signaling to the district court judge that there may be some issues. And finally, I'd just like to respond briefly to counsel's point that the district court judge accepted the government's position regarding the Speedy Trial Act. Judge St. Eve, I think you correctly noted that the district court judge did not accept that, which was made clear both at the hearing when he made the interest of justice finding and told the government, if you're comfortable going ahead, that's fine, but I will consider potentially any defense motion on a speedy trial issue. And then in the later order also made very clear that this was an interest of justice finding. How many lawyers did Mr. Bell go through in the district court? So, Your Honor, there were three attorneys that he went through before his trial. He had three attorneys then, and then he also, after his trial, got a different attorney for sentencing. So it's four total, but three before the trial occurred. And is there anything in the record, other than the fact that he had three trials at the point of trial, that he had three attorneys, is there anything in the record indicating that he had been uncooperative with those lawyers? Yes, Your Honor, so I believe the first attorney, Michelle Schneider-Hines, filed a motion to withdraw as his attorney in September of 2015 and indicated that Mr. Bell had requested that he would like her to withdraw. And then the second attorney was Charles Shire, and I believe at the July 21, 2017, status conference, Mr. Shire indicated that Mr. Bell would like him to withdraw, and Mr. Bell confirmed that in court. And then the third attorney he had, Mr. Toner, did take him through the trial and brought up the one speedy trial period. It may have been in part due to the motion for a new trial that was later filed that he switched to a fourth attorney. I'm not sure of the exact reason for the post-trial attorney switch. In any case, I'll just summarize that specific speedy trial challenge by noting that in the district court order on the Speedy Trial Act motion, Judge Shadid really affirmed the interest of justice finding, and he emphasized it was in Mr. Bell's best interest, which I think you can show from the almost colloquy he did with Mr. Bell at the July 22, 2015 hearing. Judge Shadid was very concerned with. This was a defendant who was demanding to go to trial without his attorney potentially have looked at very significant discovery. And I would also note that no pretrial motions had been filed at that point either. And in this case, there actually was a pretrial motion that was partially successful regarding Officer Sinks' search. So that's another reason that it seems pretty clear that nobody was prepared to go to trial on the 27th of July in 2015. It seems that the defense counsel may have decided to no longer challenge based on statements in court today, the June 8th to 15th, 2016, and August 26th to 31st, 2016 time period. But the government would maintain that pretrial motions were pending during that period, and therefore the Speedy Trial Act exclusion was appropriate. And then regarding the unavailability of a witness, I think your honors have really hit on the salient point here, which is, is an appearance by videoconference really, does that make him an available witness, especially in a case like this where a large part of the case does depend on who was at the time a confidential source but now has been identified as Mark Turner's testimony? Can you have that person whose cross-examination, as Mr. Toner identified, Mr. Bell's attorney, is the bulk of your defense, can you have that person appearing by videoconference from a jail? How would you show them video? How would you show them paper? It seems, as Mr. Toner said, a grave disadvantage. I think Judge Hamilton, as you said, it would be a logistical nightmare. That was his phrase, right? He said a grave disadvantage, and I think he also did say logistical nightmare. I think that's correct, your honor. I didn't make it up. I didn't think you did. And, let's see, and this is a situation where there's a quarantine going on at the prison. There are people with 104 degree fevers. The jail staff has said he absolutely can't come. And frankly, it's not clear that the right to confrontation would be satisfied by this appearance by videoconference under Crawford and its progeny and potentially Rule 26. So this was a strategic decision that was properly left to Mr. Bell's attorney. Mr. Toner, Mr. Bell's attorney, didn't have to obtain Mr. Bell's consent, and therefore we believe that that exclusion under the Speedy Trial Act was also appropriate. We also argue that there's no constitutional speedy trial error. Because Mr. Bell did not preserve constitutional speedy trial claim in district court, the review here should be for plain error, and here the court did not clearly err. One examiner. Could I ask you to turn to the Fourth Amendment issue? Yes, absolutely, Your Honor. And in particular, what does the record show about efforts by Officer Nixon to corroborate the information he was getting from Turner that was put into the warrant application? Go ahead. Sorry, Your Honor. Yes, Your Honor. I think that the record here shows that there was significant corroboration going on. First of all, you have Turner's initial proffer with law enforcement when he's been fronted on meth charges and decides to confess to the burglary of the firearms from his co-worker. At that point, there is already corroboration of Turner's story. First of all, it's against his interest to say that he's stolen firearms from his co-worker, even during a proffer, although I'm sure he's hoping to get some sort of credit for it. But second, we already had in that instance Mr. Turner's co-worker had identified him as a potential suspect, so this story is already following through. And in terms of corroboration for the sale of the firearms to Bell and Bell's brokerage of the firearms sales, the corroboration is very strong. You have two audio and video recorded controlled buys taking place in February of 2015. During these buys, you have Mr. Turner and Mr. Bell discussing the fact that Mr. Bell had sold the AK-47 and what initially was thought to be a sniper rifle and later was determined to be a pellet gun. And then you have them talking about, you have at one point during the buys, Mr. Bell talking about how it was some sort of Russian AK. We know that the gun that was stolen from the co-worker's house was missing a magazine, which is sort of a term used interchangeably with clips in these transcripts. And essentially they have Mr. Turner talking to Mr. Bell about how he knows a source that could get Mr. Bell clips or magazines for this AK-47 rifle. So it's very clear what they're talking about. And then you also have the added corroboration of you can hear on the video, you can see from the transcript and hear on the audio and video, that Mr. Bell is showing Mr. Turner something on his phone. Mr. Turner is giving Mr. Bell his cell phone number, and this appears to be a picture of the AK-47. And then directly after that, Mr. Turner gets out of the car, goes to reconvene with agents, and he shows Agent Nixon this photograph of an AK-47 that's missing a magazine on his phone that he says Mr. Bell has texted him. But the implication by defense counsel that Agent Nixon is just making this up and not getting any confirmation from Mr. Turner is entirely untrue. We see an exchange of phone numbers going on. We see a discussion of the AK-47, and it was certainly reasonable of Agent Nixon, given everything he knew at that point, to believe Mr. Turner's account. Your Honor, we would just reassert that we believe that the court properly determined the photograph of the AK-47 on Mr. Bell's phone should not be suppressed due to the independent source doctrine and also due to inevitable discovery doctrine. I don't understand your inevitable discovery argument. Your Honor, our position on inevitable discovery is that because, and it's related to the independent source argument, our position on inevitable discovery is that because Agent Nixon had known at the time of this February 2015 and video-controlled buys that there was a photograph of an AK-47 on Mr. Bell's phone, law enforcement would have gotten a warrant for his phone. But you got the warrant. Yes, yes, Your Honor. I thought that's why I'm struggling categorically. I understand the argument that you had a sufficient independent basis for probable cause for that warrant, independent of what Officer Sinks had seen. But it's just not clear to me how that works. Yes, Your Honor, and possibly that was not as compelling as the independent source doctrine and may have been overkill to include. But to address further the April 2015 affidavit, we also want to just point out for the record that that affidavit contained probable cause even without Officer Sinks' search. The affidavit describes the theft of a Glock pistol, two AR-15s, two AK-47s, and an air rifle from the confidential source's co-worker's home. It noted the confidential source was ID'd by his co-worker as a suspect. It stated the confidential source later was arrested on meth charges and confessed to burglary on a proffer. And it also noted that the confidential source confessed that he had brought the firearms and pellet gun to Peoria and sold them to a drug dealer by the name of Jay for money and cocaine. And that he had stolen them in the first place. Yes, yes, I'm sorry. It disclosed that. I didn't mean to gloss over that. Additionally, it goes over his agreement with law enforcement to assist in locating the AK-47. To that end, it details his cooperation during the February 2015 controlled buys. It talks about an inmate at a local jail's identification of the individual pictured during those buys as DeMonte Bell or the nickname Tay. And it also says that the confidential source identified a law enforcement photo without identifiers of this individual as Jay, the drug dealer that he knew. So it's our position that a practical reading of the April 2015 affidavit establishes probable cause or a fair probability that a photo of the AK-47 was found on Mr. Bell's phone. Your Honor, I see I'm almost out of time. Would you like me to address good faith or the Franks hearing? If not, I'll rest on the arguments in our briefs and request that the court affirm. Thank you. Thank you, Your Honor. Rebuttal for Mr. Bell. That will be coming from Mr. Fates. May it please the Court. I'm Clayton Fates, continuing for Mr. Bell, and I'll address the Speedy Trial Act and the Fourth Amendment issues in my time. Under the Speedy Trial Act, it doesn't matter whether there's any kind of comparative fault for the delays that are caused. The only question is whether 70 days of unexcluded time have elapsed. Here, because Mr. Turner was not an unavailable witness under the definition of the provision, and because the government didn't meet their burden of proof to establish that, the time that was excluded under that provision was improperly excluded, and it pushes the clock over 70 days, at least with regards to count three. Witnesses appear by videoconference all the time, even witnesses who are currently incarcerated. They can interact with trial exhibits if those exhibits are sent to the prison ahead of time. They may appear in civil cases all the time, but in criminal cases where the defendant has a right to confront, a right to cross-examine, they don't appear by video all the time. And that's the concern. Is a video appearance going to be able to satisfy those confrontation rights? And if not, is the witness then unavailable? No, Your Honor. And that's because those confrontation rights are waivable, and it's clear from Mr. Bell's colloquy with the district court that he was not concerned with whether or not Mark Turner would appear live in person. He was interested in having his trial in a timely, speedy fashion. Would you agree that Mr. Turner was probably the most important witness for the government here? I would. Because Mark Turner wasn't unavailable by the definition of the statute, the only question here is whether or not Mr. Bell has completely waived this argument on appeal. Waiver is an incredibly harsh sanction for a defendant like Mr. Bell. Under common law, it's to be . . . Why is that a harsh sanction when he and his lawyer are asking the district judge to do different things? It's a harsh sanction because it extinguishes his right to raise this at all. Now, the facts of this case are remarkable, partly because he and his lawyer were asserting to the district court two different things. The district court chose to engage in a colloquy with Mr. Bell, and through that colloquy became aware that Mr. Bell's priority were his speedy trial rights. He moved to dismiss this case on speedy trial grounds prior to the unavailable witness exclusion, but orally he was raising those rights again and again and again. And so for him to now be unable to raise that issue on appeal seems remarkably unfair. How do you get around this circuit's opinion in O'Connor? Is it your opinion that we'd have to overrule that in order to find no waiver, or that it was dicta? No, Your Honor. Our position is that it's dicta, first and foremost. Second, the facts of this case show why a strict reading of O'Connor or a strict implementation of the rule from the D.C. Circuit case would be unfair. And finally, in O'Connor, this court's reasoning relied partly on the fact that the Speedy Trial Act typically places the burden of proof on the defendant, but the unavailable witness provision is the exception in the Speedy Trial Act. It's the only portion that places the burden of proof on the government. What if they had not been able to show Turner the videotape, or show him exhibits including the transcripts of the audiotapes, which I think you would agree were key here. Does that change your analysis? It could. It could. That would certainly make the video conference a less appealing option. I don't think we have facts on the record to support that that was the case here, though. And again, witnesses appearing by video conference is very common. I think the district court specifically held that it was unclear if they would be able to provide him exhibits in advance or use the video. What is clear from the record, Your Honor, is that Mr. Bell was satisfied with the trial proceeding whether or not Mark Turner could appear in person. And I would like to turn to the Fourth Amendment issues here. Mr. Nixon was able to corroborate that Mr. Bell had a criminal history. He was able to corroborate that Mr. Turner had participated in a burglary, but he was not able to corroborate anything regarding the critical fact of this case, whether or not a photograph existed on Mr. Bell's cell phone. What Agent Nixon did was... Why wouldn't the audiotape and videotape corroborate that where, although it may not be the best quality of tape, you can tell they're talking about a picture of the firearm on a cell phone. He's giving him his cell phone number, and then he shows the agent what he says was sent via text. Why isn't that perfect corroboration? It's not perfect corroboration because it requires Agent Nixon to draw an inference, and other inferences could be plausible. If Mark Turner had been in possession... This is probable cause, though, right? That's exactly correct. You don't have to have conclusive proof that you're going to find what you're looking for. No, Your Honor, but it is the role of the issuing judge to look at the facts of the case and draw those inferences. By making those inferences himself, Agent Nixon... What inference could be drawn by the fact that Bell said on the video that he had a picture of this, and then Turner gave him his cell phone number after they were talking about texting the picture to Turner? I understand that you're saying Agent Nixon drew the inference that it was texted. So take out Agent Nixon seeing the photo. That portion of the conversation, what's the other inference that could be drawn from that? Well, I think what's important about that transcript is that Mark Turner is the one who brings up the words AK. Mark Turner is the one who brings up clips and magazines. Mark Turner is the one who's instigating all of this information. We don't know from the affidavit that Mr. Nixon submitted whether or not Mark Turner and Mr. Bell had any kind of a contentious relationship or a past history where Mr. Turner would want to implicate Mr. Bell. But that's a separate issue than what was actually said on the tape. The other plausible inference I think that could be drawn is that Mr. Turner had that photograph on his cell phone of a gun that he had taken in his own possession, that that was Mr. Turner's photo of Mr. Turner's gun, and that he was using the controlled by as a way of implicating Mr. Bell by suggesting that this photograph had been texted to him. Regardless, we think that it's the issuing judge's job to look at the actual facts of the case and determine whether or not they add up to probable cause, and here Agent Nixon usurped that role. Thank you. Thank you, counsel. And our thanks to both counsel, all three counsel, and to the Bloom Clinic for the service you've provided to your client and to the court. Thank you, Professor.